**Affirm and Opinion Filed August 18, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-01316-CR
### No. 05-19-01317-CR

### MICHELLE CHRISTINE DAVIS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F16-55979-V and F16-55980-V**

## MEMORANDUM OPINION

Before Justices Pedersen, III and Reichek[1]
Opinion by Justice Pedersen, III

A jury found appellant Michelle Christine Davis guilty of an accident involving injury or death and intoxication manslaughter. The jury assessed her punishment for intoxication manslaughter at eleven years' confinement and a $10,000 fine. In accordance with the jury's recommendation, the trial court probated the assessed punishment for the offense of accident involving injury or death offense—ten years' confinement and a $10,000 fine—for ten years.

---

[1] Justice Bill Whitehill was a member of the original panel, but Justice Whitehill is no longer a member of the Court, and he did not participate in the issuance of this opinion.

In this Court, appellant contends that the evidence was insufficient to support the jury's guilty verdicts. She argues further that the trial court erred by sua sponte dismissing six jurors and by failing to include causation in the application paragraph of the intoxication-manslaughter jury charge. In a cross-point, the State asks us to reform both judgments to reflect the correct terms of appellant's punishment. We affirm both judgments as modified.

## BACKGROUND[2]

During the early morning of June 19, 2016, Abigail Corchado and Eunice Chavez were headed home after spending time at a Dallas club. Chavez had been drinking; Corchado had not. Corchado was driving her Volkswagen Jetta when it was hit by a truck that did not stop. The accident damaged the Jetta's hood, causing it to fly up and crack the windshield. Corchado stopped once and—believing that the Jetta was drivable—continued driving. However, once she began heading north on Central Expressway the hood flew up again, causing more damage to the windshield. Corchado steered the Jetta into the "gore" between the right-hand lane of Central Expressway and the Knox-Henderson exit.[3]

Robert Jones saw the disabled vehicle and stopped his car in the gore, about thirty feet ahead of Corchado's. He and Corchado stood close to his car and talked

---

[2] Relevant specifics of the witnesses' testimony are related below in the discussion of sufficiency of the evidence.

[3] Appellant suggests this terminology, and we adopt it for purposes of this opinion. A gore is a triangle-shaped island, painted on the pavement, separating the freeway on the left from the exit lane on the right.

for approximately ten minutes waiting for police to respond to their 911 calls. During that time, Chavez got out of the Jetta, walked around the car, and sat down on the pavement next to the driver's door; her knees were pulled up to her chest, and she was sobbing. Jones told Corchado to tell Chavez to get back in the car, and Corchado called to her friend with that instruction.

At this point in time, appellant was driving her Audi north on Central Expressway in the far right lane. Evidence would show that she was driving under the influence of alcohol, marijuana, and prescription drugs. As Chavez began to stand up, appellant veered out of her lane, sideswiped the Jetta, and struck Chavez. The collision caused Chavez to be thrown close to where Jones and Corchado stood. Chavez died at the scene from the blunt force injuries caused by the collision. Appellant did not stop or return later to the scene of the accident.

Two witnesses testified at trial concerning appellant's driving. Ethan Sookma, a bartender returning home after work, was driving behind appellant; he stopped after he saw the accident happen. David Nugent, an Uber driver, passed the scene of the accident and saw appellant's Audi ahead of him, weaving between lanes and then speeding away. Approximately thirty to forty-five minutes later, Nugent came upon what he recognized as the same car, disabled on the side of Skillman Street, miles from the Central Expressway accident. Nugent called 911.

A number of police officers interacted with appellant at the Skillman site. Officers interviewed her, inspected her disabled Audi, and conducted tests to

determine whether she was intoxicated; they determined she was. Meanwhile the police investigated the Central Expressway accident scene. The officer in charge of that accident, Detective Albert L. Chacon, also went to the Skillman site, interviewed appellant, and examined her vehicle.

Appellant was arrested and was charged with intoxication manslaughter and accident involving injury or death. A jury found her guilty of both offenses, and the trial court sentenced her according to the jury's assessment and recommendations: eleven years and a $10,000 fine for the intoxication manslaughter and ten years (suspended) and a $10,000 fine for the accident involving injury or death. This appeal followed.

## DISCUSSION

Appellant raises ten issues for our review.

### Sufficiency of the Evidence

Her first two issues challenge the sufficiency of the evidence to support the jury's guilty verdicts on the two charged offenses. We review these challenges by examining the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "The reviewing court must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*,

214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318–19). "When the record supports conflicting, reasonable inferences, we presume that the jury resolved the conflicts in favor of the verdict." *Curry v. State*, 622 S.W.3d 302, 310 (Tex. Crim. App. 2019) (citing *Jackson*, 443 U.S. at 326). Circumstantial evidence is just as probative as direct evidence in establishing the guilt of an accused; indeed, circumstantial evidence alone can be sufficient to establish guilt. *Id.*

### *Intoxication Manslaughter*

In her first issue, appellant contends that the evidence was insufficient to support the jury's verdict on intoxication manslaughter. To prove that offense, the State was required to establish that appellant (1) operated a motor vehicle in a public place, (2)[a] was intoxicated, and [b] by reason of that intoxication, caused the death of Chavez by accident or mistake. *See* TEX. PENAL CODE ANN. § 49.08(a). Appellant does not challenge the State's evidence that she was driving in a public place or that she was intoxicated while she drove. Instead, she challenges the evidence establishing that her intoxication caused Chavez's death.[4]

---

[4] Appellant contends that Texas law concerning causation in an intoxication manslaughter case was changed by the Texas Court of Criminal Appeals in 2014, when that court asserted that the offense "require[s] proof that it was the intoxicated driving that caused the victim's injuries, not merely that the defendant was driving (while intoxicated) and that the person had been injured by the defendant's driving." *Hanna v. State*, 426 S.W.3d 87, 98 n.57 (Tex. Crim. App. 2014). While we agree with appellant that this is the proper causation standard, we disagree that *Hanna* marked a change in the law. It appears that the driver's intoxication has been the required cause of injury in this offense at least since it was added to the penal code in 1993. *See* Acts 1993, 73rd Leg., R.S., ch. 900, §§ 1.01 (amending code), 49.08 ("INTOXICATION MANSLAUGHTER. (a) A person commits an offense if the person: (1) operates a motor vehicle in a public place, an aircraft, or a watercraft; and (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake."), 1993 Tex. Gen. Laws 3586, 3697 (now codified in TEX. PENAL CODE ANN. § 49.08). And cases predating *Hanna*'s footnote have made this

The evidence is undisputed that the accident occurred when appellant veered out of her lane on the highway, entered the gore, sideswiped the Jetta, and struck Chavez. Appellant challenges the finding that her intoxication was the "but for" cause of this conduct.[5] Viewing the evidence in the light most favorable to the verdict, the following direct evidence is relevant to that finding:

- When Corchado determined the Jetta was not safe to drive on the highway, she parked in what we have described as the gore. Detective Chacon testified that the gore was "a big space," designed for broken down vehicles. Jones testified that the gore was wide enough to open doors on the Jetta and get out without being in traffic on either side.

- Jones testified that Chavez got out of the Jetta and sat leaning on the front passenger door or tire. He stated that she was not in the highway; she sat with her knees pulled to her chest, but she could have stretched her legs out and still been within the gore. Chacon testified that

clear. *See, e.g., Glauser v. State*, 66 S.W.3d 307, 313 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("Appellant correctly asserts the State must prove that a defendant's intoxication, and not just his operation of a vehicle, caused the fatal result.").

[5] At one point in her briefing, appellant complains that the State improperly "shifts the burden from [appellant's] intoxication to [appellant's] 'conduct' generally." Of course an actor's "intoxication" cannot somehow act in a manner separate and apart from that intoxicated actor's conduct. It is appellant's intoxicated driving that must have caused the death of the victim. *See Sanders v. State*, No. 05-12-01186-CR, 2014 WL 1627320, at *8 (Tex. App.—Dallas Apr. 23, 2014, pet. ref'd) (not designated for publication) ("We conclude the State presented evidence from which the trial court could have properly determined that appellant's intoxicated driving caused the accident."); *see also Hanna*, 426 S.W.3d at 98 ("the State must prove that appellants intoxicated driving was the 'but for' and proximate cause of the damage").

Chavez's landing spot indicated that she was in the gore when she was hit; there was no way she could have been in the roadway.

- Jones testified that the highway was straight where the accident took place.

- Corchado and Jones stood in the gore, about thirty feet north of the Jetta, for at least ten minutes before the accident. Facing the Jetta, Jones saw headlights of the cars travelling north on Central Expressway. He testified that all the other cars going north went straight, but as the Audi approached he saw "a pair of headlights kind of veering off the road and [the car] crosses over the line and hits [Chavez]." The headlights were heading directly toward him and Corchado. Corchado saw the Audi's headlights after she turned toward Chavez. She testified that "[t]hey seemed almost like they were going towards us instead of next to us like all the other headlights. They were very bright." She continued, saying it was "[a]lmost like when you're standing in front of your car with the headlights on. That's how bright it felt."

- Chacon testified that there were no skid marks at the accident site.

- Heidi Christensen, a toxicology chemist at the Dallas County Southwestern Institute of Forensic Sciences (SWIFS), testified that appellant's blood contained alcohol, marijuana, and prescription drugs. She testified that studies show that, with regard to driving, marijuana

use is most sensitive to "tracking," which includes "maintaining the car within the lane"; in addition, "the presence of alcohol has been shown to increase this impairment."

- Emily Ogden, M.D., a medical examiner at SWIFS, performed the autopsy on Chavez. She testified that the cause of Chavez's death were blunt force injuries consistent with being struck by a motor vehicle.

In addition to this direct evidence, appellant does not dispute that the evidence establishes she was intoxicated when she struck Chavez.

Based on this evidence, jurors could have made a number of rational inferences: Corchado did not cause the accident by parking her disabled car in the gore; Chavez did not cause the accident by entering the highway; appellant did not leave her lane of traffic because the highway curved or otherwise changed direction; no other driver travelling north on the highway that night was forced to leave its lane because of debris in the highway or a defect in the highway itself; appellant had not skidded and veered while trying to avoid a problem on the highway; the combination of marijuana and alcohol in appellant's system would have impaired her ability to maintain the Audi within her lane; and Chavez's death was caused by her being struck by the Audi.[6] We conclude that a rational jury could have found that

---

[6] To the extent there could be other rational inferences from the direct evidence that conflict with these, we must presume that the jury resolved the conflicts in favor of the verdict. *Curry*, 622 S.W.3d at 310.

appellant's intoxication caused Chavez's death beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

The evidence is sufficient to support the jury's verdict finding appellant guilty of intoxication manslaughter. We overrule appellant's first issue.

### *Accident Causing Injury or Death*

In her second issue, appellant argues that the evidence was insufficient to support the jury's guilty verdict on the charge of accident causing injury or death, commonly called failure to stop and render aid. On that charge, the State was required to prove that appellant—as the operator of a vehicle involved in an accident that resulted in death—failed to comply with requirements of section 550.023 of the Texas Transportation Code, namely:

> (1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;

> (2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident;

> (3) immediately determine whether a person is involved in the accident, and if a person is involved in the accident, whether that person requires aid; and

> (4) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.[7]

---

[7] Section 550.023 requires that the operator:

(1) give the operator's name and address, the registration number of the vehicle the operator was driving, and the name of the operator's motor vehicle liability insurer to any person injured or the operator or occupant of or person attending a vehicle involved in the collision;

TEX. TRANSP. CODE ANN. § 550.021(a). It is undisputed that appellant did not stop after the accident or return to the scene of the accident.

The statute requires a driver to stop and render aid (a) if the driver knows that she was involved in an accident and another person was injured or killed or (b) if she knows that she was involved in an accident that was reasonably likely to result in injury to or the death of a person. *Curry*, 622 S.W.3d at 309. But appellant contends that she did not know that she had hit someone and thus had no obligation under section 550.021(a).

Officer Brian Everitt, the first police officer to interview appellant where her car had broken down on Skillman, testified that appellant told him "she knew she hit something but she wasn't for sure what."[8] He asked appellant whether she might have hit a curb or a dog, but she said she did not know. Later, appellant told both Detective Angelo Ragglia (who performed DWI tests on appellant) and Detective Chacon that she thought she had hit a curb.

---

(2) if requested and available, show the operator's driver's license to a person described by Subdivision (1); and

(3) provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation.

TRANSP. § 550.023.

[8] The trial court instructed the jury on mistake of fact, explaining that if jurors found beyond a reasonable doubt that appellant "through mistake formed a reasonable belief about a matter of fact, to-wit: [appellant] did not believe she had been involved in an accident" then they were to acquit. Appellant concedes in this Court that she knew she had been involved in an accident; she does not rely on this instruction.

–10–

Appellant also contends that the evidence shows that Chavez was seated or just beginning to stand when the Audi hit her, so Chavez was not clearly visible when the accident occurred. And while appellant concedes that Nugent's testimony of her fleeing the site of the accident is circumstantial evidence of guilt, she argues that her flight was not evidence of guilt of a specific criminal act, i.e. of a failure to stop and render aid to an injured person. Appellant argues that only speculation supports a finding that (a) either she knew the Central Expressway accident rendered a person injured or killed, or (b) she knew that the accident was reasonably likely to have rendered a person injured or killed.

Our review of the record indicates that the following evidence is relevant to the issue of what appellant knew concerning the nature of her accident:

- Jones testified that Chavez was thrown in the air some thirty yards from the point of impact and she was lifted between five and six feet in the air. Her body landed close to where he was standing north of the Jetta.

- Sookma, who was driving immediately behind appellant, saw the Audi leave its lane. He saw the Audi's brake lights go on just before the crash. The brakes were already applied when the Audi made contact; after contact, the driver "let off" the brakes and drove away. She corrected her direction, returning to the highway headed north. Sookma saw Chavez in the air as he passed, also headed north.

- Nugent testified that he noticed the Audi after he passed and saw the accident. He said the Audi's driver was weaving in front of him and that she "put on a blinker to go right and the car would go left, put on a blinker [to] go left and the car would go right." Before he could catch up with the Audi to get its license plate, "the car took off like a bat out of hell [and] it was gone."

- Detective Chacon testified that there are no curbs at the site of the Central Expressway accident; the gore is created by lines painted on the roadway. Chacon testified that his inspection of the Jetta established that it had been sideswiped, i.e., that the Audi "came from the back and struck it," causing damage up the entire left side of the Jetta. He also testified that he found pieces of appellant's Audi in the gore close to Chavez's body.

Again, in addition to this direct evidence, appellant has conceded she was intoxicated when she struck Chavez.

We conclude that jurors could have rationally inferred that appellant saw Chavez as she drove up the side of the Jetta where Chavez was sitting or beginning to stand up. Jurors could have rationally inferred that appellant saw Chavez after she struck her when appellant continued driving north as the body was thrown in that same direction. Even if jurors were not persuaded that appellant actually saw Chavez at some point, they could have rationally inferred that she knew the accident was

reasonably likely to have resulted in injury to or the death of a person: she knew there was a car broken down on the highway so its driver could likely be in the area, she knew the impact was sufficient to send pieces of her car flying off, and her conduct immediately following the accident—her inability to control the car and flight from the scene—all support an inference that appellant knew she was involved in a serious accident on a highway. Alternatively, jurors could have rationally inferred that the only reason appellant did not know the nature or severity of her accident, including the fact that she had struck a person, was because she was intoxicated; they were instructed that her voluntary intoxication was no defense to the offense.

In *Curry*, the defendant charged with failing to stop and render aid contended that he "did not believe that [he] hit a bicyclist but instead believed that someone standing near the road threw a beer bottle at [his] truck." 622 S.W.3d at 307. The Court of Criminal Appeals stated that the sufficiency issue in that case was one of credibility, "which is the province of the jury." *Id.* at 310. Here, although appellant initially told Officer Everitt that she had hit something but didn't know what, later that morning she told investigating detectives that she thought she had hit a curb. Jurors are free to disbelieve a party's statement; they "may also accept one version of the facts and resolve inconsistencies in favor of either party." *Arnold v. State*, No. 05-15-00482-CR, 2016 WL 2733080, at *1 (Tex. App.—Dallas May 11, 2016, no pet.) (mem. op., not designated for publication). We must defer to the jury's

–13–

resolution of conflicts in testimony, its weighing of evidence, and its drawing of reasonable inferences. *Hooper*, 214 S.W.3d at 13.

We conclude that a rational jury could have found beyond a reasonable doubt that appellant knew that she was involved in an accident and another person was injured or killed or knew that she was involved in an accident that was reasonably likely to result in injury to or the death of a person. The evidence was sufficient to support the jury's guilty verdict for accident causing injury death to a person. We overrule appellant's second issue.

### Sua Sponte Dismissal of Jurors

In appellant's third through ninth issues, she argues that the trial court erred by sua sponte dismissing prospective jurors who were not absolutely unqualified. She addresses separately each of the six venirepersons who were so dismissed (issues three through eight) and then contends that those dismissals, taken together, were cumulative error (issue nine).

During voir dire of these cases, a number of prospective jurors responded to the attorneys or to the judge that they were unable to consider the entire range of punishment for the charged offenses, whether probation at the low end or twenty years at the high end. There is some disagreement about which of those individuals were rehabilitated by further questioning. The record of voir dire and the proceedings following is less than clear. However, even if we accept all of

appellant's factual contentions concerning the voir dire proceedings as true for purposes of our analysis, she cannot prevail on these issues.

"[A] trial judge should not on its own motion excuse a prospective juror for cause unless the juror is absolutely disqualified from serving on a jury." *Goodman v. State*, 701 S.W.2d 850, 856 (Tex. Crim. App. 1985). A prospective juror is absolutely disqualified from service if she has been convicted of misdemeanor theft or felony, she is under indictment or other legal accusation for misdemeanor theft or a felony, or she is insane. TEX. CODE CRIM. PRO. ANN. arts. 35.19, 35.16(a)(2–4). The trial court dismissed the venirepersons at issue because they acknowledged at some point in the voir dire process that they could not consider the full range of punishment in this case. Because these dismissed venirepersons did not meet the statutory criteria for absolute disqualification, the trial court erred by dismissing them sua sponte. *See Goodman*, 701 S.W.2d at 856.

The dismissal of the venirepersons at issue did not implicate appellant's constitutional rights, so we must disregard the error unless it affected her substantial rights. *Jones v. State*, 982 S.W.2d 386, 391–92 (Tex. Crim. App. 1998) (citing TEX. R. APP. PROC. 44.2(b)). The Texas Court of Criminal Appeals has determined that the erroneous dismissal of a prospective juror calls for reversal "only if the record shows that the error deprived the defendant of a lawfully constituted jury." *Jones*, 982 S.W.2d at 394. We resolve that issue by looking to the fairness and impartiality of the jurors who actually sat. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim.

App. 2009) (citing *Jones*, 982 S.W.2d at 391). An accused has no right to have any particular individual serve on the jury; her only substantial right in this vein is assurance that the jurors who do serve are qualified. *Jones*, 982 S.W.2d at 393. "The defendant's rights go to those who serve, not to those who are excused." *Id.*

In this case, appellant has not complained that her jurors were anything but fair and impartial.[9] And we presume that jurors are qualified absent some indication in the record to the contrary. *See Ford v. State,* 73 S.W.3d 923, 925 (Tex. Crim. App. 2002). Our review of the record in this case has not indicated any such concern. We conclude that the trial court's dismissal of the jurors—whether considered singly or as a group—did not affect her substantive rights. We overrule appellant's third through ninth issues.

### Causation in the Application Paragraph of the Jury Charge

In her tenth issue, appellant contends that the trial court erred by not including the substantive law on causation in the application paragraph of the jury charge for intoxication manslaughter. Appellate resolution of a jury-charge issue involves two steps. First, we determine whether error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error does exist, we determine whether the error caused

---

[9] We note that appellant's concern with the dismissed venirepersons involved their stated inability to impose the maximum punishment for her charged offenses, twenty years, while the jurors seated "had no reservations about sentencing [appellant] to the maximum punishment." We note further that appellant was not sentenced to the maximum punishment possible: the jury assessed her punishment for intoxication manslaughter at eleven years and a $10,000 fine; it assessed her punishment for accident involving injury or death at ten years and a $10,000 fine with a recommendation that confinement be suspended.

sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When—as in this case—the error was not objected to, we will reverse only if the error created egregious harm such that the defendant was denied a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

Appellant acknowledges that in the abstract portion of the charge, the court included this causation instruction based on section 6.04(a) of the penal code:

## CAUSATION

A person is criminally responsible if the result would not have occurred but for her conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the Defendant clearly insufficient.

Appellant contends that "[t]he application paragraph, however, did not include the law on causation." Because the entire application section of the charge is relevant to our discussion, we set it forth in its entirety:

## APPLICATION PARAGRAPH

[Section 1]

Now, bearing in mind the foregoing instructions, if you unanimously believe from the evidence beyond a reasonable doubt that [appellant] on or about June 19, 2016, in the County of Dallas and State of Texas, did unlawfully, then and there operate a motor vehicle in a public place while intoxicated, in that [appellant] did not have the normal use of her mental or physical faculties by reason of the introduction of alcohol or a controlled substance or a drug or a dangerous drug or a combination of two or more of those substances, and by reason of that intoxication did cause the death of [Chavez], an individual, by accident or mistake, to-wit: by driving said motor vehicle into and against said complainant, thereby causing the death of that said

–17–

individual, then you will find [appellant] guilty of intoxication manslaughter as charged in the indictment.

If you do not so believe, or if you have a reasonable doubt thereof, you will acquit [appellant and] say by your verdict, "not guilty."

[Section 2]

You are further instructed that you must acquit [appellant] even if you find that the death of [Chavez] would not have occurred but for the conduct of [appellant] if you also believe:

a) the conduct of [Chavez] was a concurrent cause sufficient to cause the death of [Chavez], and

b) the conduct of [appellant] was clearly insufficient to cause the death of [Chavez].

If you have a reasonable doubt thereof, you will acquit [appellant] and say by your verdict "not guilty."

Appellant argues that the only disputed issue at trial was whether the accident occurred "but for" appellant's intoxication, and therefore "the failure to include causation in the application paragraph was error." We conclude that a fair reading of this section establishes that the element of causation, and specifically "but for" causation, was in fact included in the trial court's charge.

We address the second portion of the application section first. That portion spoke to concurrent causation and instructed jurors that even if they found that Chavez's death would not have occurred *but for* appellant's conduct, if Chavez's conduct was sufficient to cause her death and appellant's conduct was insufficient to have caused it, then they must acquit. We begin here because this concurrent-

–18–

cause argument was appellant's theory of the case at trial. Indeed, counsel for appellant read this portion of the charge to the jury in his closing argument, stating:

> On the intoxication manslaughter case, of course this goes right to what the causation paragraph is. And it says, you're further instructed you must acquit [appellant] even if you find from the death, find the death of [Chavez] would not have occurred but for the conduct of [appellant] if you also believe the conduct of [Chavez] was a conduct sufficient to cause the death of [Chavez] and by the conduct of [appellant] was clearly insufficient to cause the death of [Chavez].

Counsel then argued that Chavez was "below eye level" and that appellant "may have never seen her, never seen her or known that she was even outside of the car. *That's what you have to decide.*" (Emphasis added.) Thus, jurors were directed to the concurrent-cause portion of the application paragraph and were told "[t]hat's what you have to decide."

However, in this Court, appellant complains that the first portion of the application paragraph fails because it does not employ the "but for" language of section 6.04(a). Instead, the charge here tracks the causation language of the penal code in its definition of intoxication manslaughter: "A person commits an offense if the person: (1) operates a motor vehicle in a public place . . . ; and (2) is intoxicated and *by reason of that intoxication causes the death of another by accident or mistake*." PENAL § 49.08(a) (emphasis added). "A jury charge which tracks the language of a particular statute is a proper charge on the statutory issue." *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994); *Hernandez v. State*, 340 S.W.3d 55, 61 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("As a general

–19–

proposition, a jury charge that tracks the language of the relevant statute is sufficient and therefore not erroneous.").[10]

The purpose of the trial court's charge is to instruct the jurors on all of the law applicable to the case they must decide. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). When we review a claim of charge error, "we examine the charge as a whole, considering the workable relationship between the abstract paragraphs of the charge—the instructions and definitions—and those applying the abstract law to the facts." *Caldwell v. State*, 971 S.W.2d 663, 666 (Tex. App.—Dallas 1998, pet. ref'd). In a number of cases, Texas courts have compared the abstract paragraphs, which give the jury definitions and instructions, to a kind of glossary, which helps the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *See id.*; *see also Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012); *Mayes v. State*, No. 05-16-00490-CR, 2017 WL 2255588, at *21 (Tex. App.—Dallas May 23, 2017, pet. ref'd) (mem. op., not designated for publication). "Thus, a charge is adequate if it contains an application paragraph that authorizes a conviction under conditions specified by other paragraphs of the jury

---

[10] Appellant relies on *Carranza v. State*, No. 08-16-00298-CR, 2019 WL 2205665 (Tex. App.—El Paso May 22, 2019, pet. ref'd) (not designated for publication), for the broad proposition that a failure to include causation in the application paragraph of a jury charge for intoxication manslaughter is error. However, in *Carranza*, the appellant's issue was the complete failure to include concurrent causation in the application paragraph when there was some evidence that the place in which the victim parked his car could have been a factor in causing the accident at issue. The *Carranza* court concluded that the failure to instruct the jury on concurrent causation was error, though it did not harm the defendant. *Id.* at *7.

charge to which the application paragraph necessarily and unambiguously refers." *Caldwell*, 971 S.W.2d at 666.

Here, the trial court properly tracked the intoxication manslaughter statute, giving the jury the critical information that it was appellant's intoxication that must have caused Chavez's death. And the trial court gave the jury additional guidance on this element by including the section 6.04(a) instruction—necessarily implicated by the application paragraph's use of the word "causes"—which incorporated the legal requirement of "but for" causation.

We conclude that the jury charge as a whole authorized the jury to convict appellant if it found that Chavez's death would not have occurred but for her intoxication. We overrule appellant's tenth issue.

## Modification of Judgments

In its cross-point, the State asks us to reform both judgments to reflect the terms of appellant's sentences correctly. In the intoxication manslaughter case, the judgment incorrectly states that the $10,000 fine assessed was probated; it was not probated. In the accident involving injury or death case, the judgment correctly states on page 1 that the assessed ten-year confinement period was suspended and appellant was placed on community supervision for ten years; however on page 2, a checked box indicates appellant was to be delivered for confinement. In addition, the judgment does not indicate that the $10,000 fine is to be paid as a condition of appellant's community supervision.

–21–

When the record provides the necessary information to correct inaccuracies in the trial court's judgment, we have the authority to reform the judgment to speak the truth. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we sustain the State's cross-point and modify the judgments as follows:

- In the intoxication manslaughter case (05-19-01317-CR), we modify the judgment to remove the word "probated" following the pronouncement of the $10,000 fine.

- In the accident involving injury or death case (05-19-01316-CR), we modify the judgment (a) to indicate on page 2 that appellant's sentence of confinement was suspended, and (b) to state specifically that appellant's $10,000 fine is to be paid as a condition of her community supervision.

### CONCLUSION

We affirm the trial court's judgments as modified.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

–22–

191316f.u05
191317f.u05
Do Not Publish
TEX. R. APP. P. 47



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MICHELLE CHRISTINE DAVIS,
Appellant

No. 05-19-01316-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F16-55979.
Opinion delivered by Justice
Pedersen, III. Justice Reichek
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

(1) on page 2, we indicate that appellant's sentence of confinement is
suspended, and
(2) we add after the statement of appellant's $10,000 fine: "to be paid as a
condition of her community supervision."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 18th day of August, 2021.

–24–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MICHELLE CHRISTINE DAVIS, Appellant

No. 05-19-01317-CR　　V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F16-55980. Opinion delivered by Justice Pedersen, III. Justice Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

(1) on page 2, we indicate that appellant's sentence of confinement is suspended, and
(2) after the statement of appellant's $10,000 fine we add: "to be paid as a condition of her community supervision."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 18th day of August, 2021.